# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| HERMAN M. JERROD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:19-CV-3131-AGF |
| ) | |
| ZACHARY PHILLIPS, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of plaintiff Herman M. Jerrod, an inmate at Eastern Reception Diagnostic and Correctional Center ("ERDCC"), for leave to commence this civil action without prepayment of the required filing fee. (ECF No. 2). Having reviewed the motion and the financial information submitted in support, the Court has determined to grant the motion, and assess an initial partial filing fee of $12.48. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will issue service on defendants Zachary Phillips and Unknown Kemple in their individual capacities, but will dismiss the claims brought against them in their official capacities. The Court will also dismiss plaintiff's claims against defendants Gary Fenwick, Nathan B. Roney, Unknown Melton, Theodore Eaton, and Unknown Harmon in both their individual and official capacities.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After

payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of the instant motion, plaintiff submitted a copy of his certified inmate account statement. (ECF No. 6). A review of plaintiff's account indicates an average monthly deposit of $11.67 and an average monthly balance of $62.41. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $12.48, which is 20 percent of plaintiff's average monthly balance.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules in order to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights. Named as defendants are seven ERDCC employees: Sergeant Unknown Harmon, Functional Unit Manager Theodore Eaton, and correctional officers Zachary Phillips, Gary Fenwick, Nathan B. Roney, Unknown Kemple, and Unknown Melton. Plaintiff is suing defendants in both their official and individual capacities.

Plaintiff alleges that on December 5, 2018 he was assigned to administrative segregation in housing unit 2, B-wing, #205. At approximately 7:00 a.m., plaintiff spoke with Officer Phillips and requested protective custody from his cellmate, Jacob Martin. Plaintiff alleges that Officer Phillips called him a "check-in" which plaintiff explains is a derogatory term for inmates who are "in fear of their lives" and need officer assistance. After making the request, plaintiff alleges that Officer Phillips, along with another non-party officer, handcuffed him, removed him from his cell, and restrained him to a bench pending transfer. Plaintiff states his hands and ankles were cuffed to the bench so that he could not move. After he was restrained, plaintiff states that Officer

Phillips's supervisor, Sergeant Harmon, asked plaintiff "where he wanted to go." Plaintiff answered that he "wished to go somewhere safe." After receiving plaintiff's answer, Sergeant Harmon exited the housing unit.

Between 8:00 a.m. to 9:00 a.m., Officers Phillips and Melton approached plaintiff to transfer him to a new cell. Plaintiff states that Officer Phillips loudly announced, so all inmates could hear, he had "a cell in C-wing for [a] special check-in." Plaintiff alleges that this comment made him believe that Officers Phillips and Melton "could possibly put plaintiff somewhere indifferent [to] plaintiff's safety." Plaintiff states he was "absolutely terrified" and requested to speak to Sergeant Harmon. Plaintiff alleges that Officer Phillips radioed to Sergeant Harmon, uncuffed plaintiff from the bench, and directed him to "get up now." Plaintiff states he did not comply because he wanted to speak to Sergeant Harmon.

Plaintiff alleges that Officer Phillips grabbed plaintiff's left arm and "tried to snatch plaintiff off the restraint bench." Plaintiff states he "held on to the bench out of fear" that Officer Phillips "would cause plaintiff some harm." After plaintiff refused to comply, Officer Phillips attempted to pry his fingers off the bench, which resulted in Officer Phillips "popping plaintiff['s] left pinky out of place" and causing him "to hit the floor." At this point, plaintiff made an "attempt to flee" because he was "upset and scared for his life." In response, Officer Phillips wrapped his arms around plaintiff's neck and chest and wrapped his legs around plaintiff's lower body. Plaintiff states Officer Melton failed to intervene during the alleged assault by Officer Phillips. Subsequently, Sergeant Harmon entered the area and escorted plaintiff to a single man cell in C-wing.

At approximately 3:00 p.m. to 5:00 p.m., after plaintiff was transferred to cell #109 in C-Wing, Officer Kemple brought plaintiff's ex-cellmate, Jacob Martin, to be housed with him. Plaintiff informed Officer Kemple that "he literally just had requested protective custody from Mr.

Martin earlier that morning," Martin was his active enemy, and another inmate should not be placed with him in a single man cell.  Plaintiff alleges that Officer Kemple ignored his statements and told him to submit to restraints or he would be pepper sprayed.  Plaintiff submitted to restraints and Martin was placed into plaintiff's new cell.  Officer Kemple removed both plaintiff and Martin's handcuffs and left the cell.  Martin told plaintiff that Officer Phillips "sent word, via another [correctional officer] that [Officer Phillips] would pay Mr. Martin to come beat [plaintiff's] ass."  Plaintiff states that Martin "then struck plaintiff in the left side of the face" and the two engaged in a physical struggle.  In response to the altercation, Officer Roney approached the cell and pepper sprayed both plaintiff and Martin.  They were then separated and placed in different cells.

The following day plaintiff alleges that Officer Phillips went to his cell and asked "how [he] liked [his] a** whooping?"  Plaintiff received medical attention for his pinky.  Plaintiff states his pinky "popped out of place" and he "popped it back in place."  A nurse provided him with a splint.

Plaintiff attached the following documents to his complaint: (1) Informal Resolution Request, dated April 2, 2019; (2) Offender Grievance, dated April 11, 2019; (3) Grievance Appeal, dated June 12, 2019; (4) Superintendent's Response to Offender Grievance;  (5) Missouri Department of Correction's Response to Grievance Appeal; and (6) Conduct Violation Report ("CVR") issued to inmate Jacob Martin for engaging in a physical struggle with plaintiff.  (ECF No. 1-1 at 6-12).  The CVR indicates that inmate Martin was interviewed by ERDCC staff after his altercation with plaintiff and Martin stated: "CO [correctional officer] said he would pay me if I did it."  (ECF No. 1-1 at 10).

Plaintiff seeks damages in the amount of $1,000,000 for individual capacity claims and $1,000,000 for his official capacity claims.

**Discussion**

A. **Official Capacity Claims**

Plaintiff's official capacity claims against all seven defendants must be dismissed. Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). In the instant action, all named defendants are employed by the ERDCC and thus are employees of the State of Missouri. "[N]either a State nor its officials acting in their official capacity are 'persons' under § 1983." *Id.*; *see also Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010 (8th Cir. 1999) (en banc) (§ 1983 suit cannot be brought against state agency), *cert. dismissed*, 529 U.S. 1001 (2000); *Walker v. Owens*, 2015 WL 128069, at *2 (E.D. Mo. Jan. 8, 2015) (a suit against an employee of the ERDCC is a suit against the State of Missouri that must be dismissed). As a result, the complaint is legally frivolous and fails to state a claim upon which relief can be granted as to all defendant ERDCC employees in their official capacities.

B. **Individual Capacity Claims**

1. **Defendant Officer Phillips**

The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992); *see also Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014) ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment"). When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017); *see also Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards

are liable only if they are completely unjustified in using force, *i.e.*, they are using it maliciously and sadistically"). The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Plaintiff alleges that on December 5, 2018, he requested protective custody from his cellmate. As a result of the request, Officer Phillips removed him from his cell and restrained him to a bench prior to the transfer. A few hours later, Officer Phillips loudly announced, so all inmates could hear, he had "a cell in C-wing for [a] special check-in." Officer Phillips uncuffed plaintiff from the bench and ordered him to "get up now." Plaintiff states that he feared for his life because Officer Phillips called him a "check-in." Plaintiff admits that he refused to comply with the directive to get up from the bench and, instead, held on to the restraint bar. Officer Phillips attempted to pry plaintiff's hands from the restraint bar, which resulted in plaintiff sustaining an injury to his pinky finger. Plaintiff further admits to attempting to "flee." Officer Phillips responded by wrapping his arms and legs around plaintiff. Other than the injury to his pinky finger, which he describes as "popping" out of place, plaintiff alleges no other injuries that required medical treatment.

Taking plaintiff's factual allegations as true, they do not permit the inference that the amount of force Officer Phillips used was unreasonable in relation to the force required. Plaintiff's allegations establish that Officer Phillips first used a minimal amount of force in trying to lift plaintiff's fingers from the restraint bar after plaintiff failed to comply with his directive to get up from the bench so he could be transferred to another cell. The allegations then establish that Officer Phillips used a greater amount of force when plaintiff admittedly attempted to "flee" after he was no longer handcuffed to the bench. It is therefore apparent that there was a need for Officer

Phillips to use force, and that he tempered the amount of force he used based upon plaintiff's actions. Plaintiff was resisting in both instances where Officer Phillips used force, which is a relevant factor to consider in determining whether plaintiff has stated a valid excessive force claim. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Plaintiff's allegations do not permit the inference that the particular force used by Officer Phillips, under the circumstances, was objectively unreasonable. Moreover, the injury to plaintiff's finger, as described by plaintiff, was minimal. The Court therefore concludes that plaintiff has failed to state a plausible claim of excessive force against Officer Phillips. *See Iqbal*, 556 U.S. at 678 (a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

To the extent plaintiff alleges that Officer Phillips violated his constitutional rights by loudly calling him a "check-in," such a claim is not cognizable under § 1983. *See Burton v. Livingston*, 791 F.2d 97, 99-100 (8th Cir. 1986) (mere words, without more, do not invade a federally protected right; "rough language" resulting only in hurt feelings is not actionable under § 1983); *Martin v. Sargent*, 780 F.2d 1334, 1338–39 (8th Cir.1985) (verbal threats and name calling are not actionable under § 1983).

Lastly, plaintiff alleges that Officer Phillips violated his constitutional rights by sending inmate Martin to his cell to attack him. This allegation does survive pre-service review under § 1915. Plaintiff states that after he requested protective custody and was transferred from B-wing to C-wing, inmate Martin was brought to him by Officer Kemple and placed in the same single man cell despite plaintiff's protest. Once Martin was in the cell, he told plaintiff that Officer Phillips "sent word, via another [unnamed correctional officer] that [Officer Phillips] would pay Mr. Martin to come beat [plaintiff's] ass." Plaintiff states that Martin "then struck plaintiff in the left side of the face" and the two engaged in a physical struggle. The CVR attached to plaintiff's

complaint indicates that Martin was interviewed by ERDCC staff after his altercation with plaintiff and Martin stated that "CO [correctional officer] said he would pay me if I did it."[1]

The Eighth Amendment imposes a duty on prison officials to protect prisoners from violence at the hands of other prisoners. *Perkins v. Grimes*, 161 F.3d 1127, 1130 (8th Cir. 1998). To state a failure to protect claim, plaintiff is required to allege that (1) defendant was aware of facts from which he could infer the existence of a substantial risk of serious harm to him, (2) he actually drew the inference, and (3) he failed to take reasonable steps to protect him. *See Farmer v. Brennan,* 511 U.S. 825, 836-38, 844 (1994). Therefore, a prison official violates the Eighth Amendment if he or she "acts with deliberate indifference to a substantial risk of harm to the prisoner." *Perkins*, 161 F.3d at 1130 (citing *Farmer*, 511 U.S. at 834).

Deliberate indifference has both an objective and a subjective component. The objective component requires the prisoner to demonstrate a substantial risk of serious harm, and the subjective component requires the prisoner to show that the official had a culpable state of mind; that is, that he actually knew of, but disregarded, that risk. *Blades v. Schuetzle*, 302 F.3d 801, 803 (8th Cir. 2002) (quoting *Perkins*, 161 F.3d at 1130). With respect to the subjective component, the official must be aware of facts from which he could infer the existence of a substantial risk of serious harm, and he must also draw the inference. *Farmer*, 511 U.S. at 837. The Eighth Amendment is not violated when the official fails "to alleviate a significant risk that he should have perceived but did not." *Id.* at 838. Assault by a fellow inmate constitutes "serious harm." *Jensen v. Clarke*, 94 F.3d 1191, 1198 (8th Cir. 1996).

---

[1] In assessing whether an action is subject to dismissal under 28 U.S.C. § 1915(e)(2)(B), courts may consider materials that are attached to the complaint as exhibits. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (citations omitted), Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

When a plaintiff adequately alleges that a correctional officer took an affirmative step to encourage an inmate to injure another inmate, such an allegation may be the basis for a failure to protect claim. *See Jackson v. Brock*, 2019 WL 1379888, at *6 (E.D. Mo. Mar. 27, 2019) (allegation that correctional officer told an inmate to "beat his a**" and then left the area is sufficient for purposes of § 1915 review; plaintiff "adequately alleged that [officer's] actions placed him at an unreasonable risk of assault."); *see also Moore v. Smith*, 2005 WL 1155866, at *3 (M.D. Pa. Apr. 22, 2005), *report and recommendation adopted*, 2005 WL 1155867 (M.D. Pa. May 16, 2005) (allegation that an inmate was paid by prison staff to assault another inmate withstood frivolity review); *Burrell v. Ford*, 2001 WL 733427, at *3 (N.D. Tex. June 26, 2001) (same); and *Doolin v. Lynch*, 2019 WL 6790640, at *1 (N.D. Ind. Dec. 12, 2019) (same). Plaintiff alleges that Officer Phillips was aware that Martin was his active enemy. Plaintiff alleges Officer Phillips deliberately failed to protect him by offering to pay Martin to assault him. Plaintiff attaches a CVR to his complaint which evidences Martin's statement to prison officials that the reason he engaged in the altercation was because Officer Martin offered to pay him. As a result, plaintiff's claim adequately states a failure to protect claim against Officer Phillips.

Accordingly, the Clerk of Court will be directed to serve process upon defendant Phillips in his individual capacity as to plaintiff's failure to protect claim.

**2. Defendant Officer Melton**

Plaintiff's individual capacity claim against Officer Melton must be dismissed. Plaintiff alleges that Officers Phillips and Melton approached plaintiff while he was on a restraint bench to transfer him to a new cell after he requested protective custody. Plaintiff states he became fearful that Officers Phillips and Melton would place him in an unsafe location after Officer Phillips loudly called him a "check-in." After being uncuffed from the bench, plaintiff states he held on to the bench and refused to move. Plaintiff alleges that Officer Phillips attempted to pry his fingers

off the bench, which resulted in Officer Phillips "popping plaintiff['s] left pinky out of place" and causing him "to hit the floor." Plaintiff states that he made an "attempt to flee" because he was "upset and scared for his life." Officer Phillips responded by wrapping his arms and legs around plaintiff's body. Plaintiff states Melton failed to intervene and protect him from the alleged assault by Officer Phillips.

As discussed above, the Court finds that plaintiff's allegations do not permit the inference that the force used by Officer Phillips in response to plaintiff's failure to comply and attempt to flee was objectively unreasonable and excessive. Because plaintiff has failed to state a plausible claim of excessive force against Officer Phillips, plaintiff's claim against Officer Melton for failure to intervene cannot withstand preservice review under § 1915.

Therefore, plaintiff's claim against Officer Melton in his individual capacity must be dismissed.

### 3. Defendant Sergeant Harmon

Plaintiff's individual capacity claim against Sergeant Harmon must be dismissed. Plaintiff alleges that Sergeant Harmon was a supervisor who asked plaintiff "where he wanted to go" after plaintiff requested protective custody. Plaintiff answered that he "wished to go somewhere safe." After receiving plaintiff's answer, Sergeant Harmon exited the housing unit. Plaintiff alleges that Sergeant Harmon later returned to the housing unit to escort plaintiff to a single man cell in another wing. Plaintiff presents no other factual allegations against Harmon.

"Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir.1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir.1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *Boyd v. Knox,* 47 F.3d 966, 968 (8th Cir .1995) (respondeat superior theory

inapplicable in § 1983 suits). Other than setting forth the conclusory statement that Sergeant Harmon failed to protect him, plaintiff has not alleged any facts to support that he was directly involved in or personally responsible for the alleged violations of his constitutional rights.

To the extent plaintiff attempts to bring a claim against Sergeant Harmon due to his supervisory role, such a claim is not cognizable under § 1983. *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir.1997) (a general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability under § 1983).

Therefore, plaintiff's claim against Sergeant Harmon in his individual capacity must be dismissed.

**4. Defendant Officer Roney**

Plaintiff's individual capacity claims against Officer Roney must be dismissed. Plaintiff alleges that he was involved in a physical altercation with Martin, a fellow inmate. Plaintiff states that Officer Roney responded to the altercation by using pepper spray. No other factual allegations have been brought against Officer Roney.

It is "well established that a malicious and sadistic use of force by a prison official against a prisoner, done with the intent to injure and causing actual injury, is enough to establish a violation of the Eighth Amendment's cruel and unusual punishment clause." *Foulk v. Charrier*, 262 F.3d 687, 702 (8th Cir. 2001). "The 'core judicial inquiry, [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (quoting *Hudson*, 503 U.S. at 7).

The Court finds that Officer Roney did not violate a clearly established federal right. "Prisoners do not have a right to be free from the use of pepper spray or physical force" when the purpose is for restoring peace. *Moore v. Russell*, 2016 WL 4158905, at *3 (E.D. Mo. Aug. 5,

2016). Plaintiff's allegations do not show that Officer Roney's use of force was more than "good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." To the contrary, plaintiff admits he was involved in a physical altercation with an inmate and that Officer Roney responded with the use of pepper spray. Plaintiff does not allege that he sustained any injury from the use of pepper spray or that Officer Roney's actions were malicious.

Therefore, plaintiff's claim against Officer Roney in his individual capacity must be dismissed.

### 5. Defendant Officers Eaton and Fenwick

Plaintiff's individual capacity claims against Officers Eaton and Fenwick must be dismissed. Plaintiff alleges that Officer Eaton "fail[ed] to protect plaintiff" and Officer Fenwick "fail[ed] to protect plaintiff, participate[d] in assault." Other than these conclusory statements, the complaint is completely devoid of any factual allegations against either defendant. Plaintiff has not alleged that Officers Eaton or Fenwick were directly involved in or personally responsible for specific violations of his constitutional rights. Liability under § 1983 arises only upon a showing of personal participation by a defendant. *See Madewell*, 909 F.2d at 1208 ("Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights."); *Martin*, 780 F.2d at 1338 (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff). Officers Eaton and Fenwick are listed in the caption and at the end of the complaint where plaintiff presents the conclusory allegation that they failed to protect him. Merely listing a defendant in the caption is not sufficient to state a claim against that defendant. *See Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (affirming dismissal of self-represented plaintiff's complaint against defendants who were merely listed as defendants in the complaint, but there were no allegations of constitutional harm against them).

Thus, plaintiff's claims against Officers Eaton and Fenwick in their individual capacities will be dismissed.

### 6. Defendant Officer Kemple

Plaintiff's failure to protect claim against Officer Kemple in his individual capacity is sufficient for purposes of initial review. Plaintiff alleges that after he requested protective custody from his cellmate, Jacob Martin, he was transferred to a single man cell in C-Wing. A few hours after the transfer, Officer Kemple brought Martin to be housed with him. Plaintiff states he informed Kemple that "he literally just had requested protective custody from Mr. Martin earlier that morning," Martin was his active enemy, and another inmate should not be placed with him in a single man cell. Plaintiff alleges that Kemple ignored his statements, placed Martin in his cell, and left the premises. Subsequent to the placement, Martin punched plaintiff in the face and the two engaged in a physical altercation until Officer Roney arrived and they were separated.

The Eighth Amendment imposes a duty on prison officials to protect prisoners from violence at the hands of other prisoners. *Perkins*, 161 F.3d at 1130. To state a failure to protect claim, plaintiff is required to allege that (1) defendant was aware of facts from which he could infer the existence of a substantial risk of serious harm to him, (2) he actually drew the inference, and (3) he failed to take reasonable steps to protect him. *See Farmer*, 511 U.S. at 836-38, 844. Therefore, the question is whether the defendant acted "with deliberate indifference to a substantial risk of harm to the prisoner." *Perkins*, 161 F.3d at 1130 (citing *Farmer*, 511 U.S. at 834).

Assault by a fellow inmate constitutes "serious harm." *Jensen*, 94 F.3d at 1198. A single incident of violence may, in some circumstances, support a failure to protect claim. *See Young v. Selk*, 508 F.3d 868, 870-73 (8th Cir. 2007) (discussing potential for substantial risk where inmate told officials of cellmate's threats, requested to be removed from cell immediately, said it was an emergency, and was subsequently attacked).

In this case, plaintiff alleged that Officer Kemple was aware of facts that plaintiff was on protective status from Martin and that placing them together in one cell constituted a risk to plaintiff.  Before inmate Martin was placed in plaintiff's new cell, plaintiff informed Officer Kemple that he requested protective custody from Martin earlier that morning and that Martin was his active enemy.  Plaintiff alleges that Officer Kemple disregarded plaintiff's statements and placed Martin in his cell without further investigation.  Having thoroughly reviewed and liberally construed plaintiff's allegations, the Court concludes that plaintiff has alleged enough facts to withstand § 1915 review for his failure to protect claim against Officer Kemple in his individual capacity. *See, e.g.*, *Criddle v. Lewis*, 2019 WL 2230928, at *7 (E.D. Mo. May 23, 2019) (finding a viable failure to protect claim against correctional officers who placed inmate in plaintiff's cell after plaintiff warned them of the likelihood of an assault).

## Appointment of Counsel

Plaintiff has filed a motion to appoint counsel.  (ECF No. 4).  In civil cases, a self-represented litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013); *see also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that a self-represented litigant "has no statutory or constitutional right to have counsel appointed in a civil case").  Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018).  When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the self-represented litigant to investigate the facts, the existence of conflicting testimony, and the ability of the self-represented litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After considering these factors, the Court finds that the appointment of counsel is unwarranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be unduly complex. The Court will entertain future motions for appointment of counsel as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis* (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $12.48 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue on the complaint, pursuant to the service agreement the Court maintains with the Missouri Attorney General's Office, as to defendants Zachary Phillips and Unknown Kemple in their individual capacities as to plaintiff's failure to protect claims under the Eighth Amendment.

**IT IS FURTHER ORDERED** that plaintiff's claims brought against defendants Zachary Phillips, Gary Fenwick, Nathan B. Roney, Unknown Kemple, Unknown Melton, Theodore Eaton, and Unknown Harmon in their official capacities are **DISMISSED**.

**IT IS FURTHER ORDERED** that plaintiff's claims brought against defendants Gary Fenwick, Nathan B. Roney, Unknown Melton, Theodore Eaton, and Unknown Harmon in their individual capacities are **DISMISSED**.

**IT IS FURTHER ORDERED** that defendants Gary Fenwick, Nathan B. Roney, Unknown Melton, Theodore Eaton, and Unknown Harmon are **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Appoint Counsel (ECF No. 4) is **DENIED** without prejudice.

An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 29th day of June, 2020.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE